KERSJES *v.* METZGER.

1. CORPORATIONS—STOCKHOLDERS—DISSOLUTION.
    In stockholders' suit to have a receiver appointed and corporation liquidated, evidence *held*, to support finding that a resolution passed at a prior stockholders' meeting that corporation be dissolved was not considered a dissolution *de· facto.*

2. SAME—APPOINTMENT OF RECEIVER FOR PROSPERING CONCERN—EQUITY.
    Under record showing that business of corporation, engaged in plumbing, heating, steam and gas fitting business, was much better than it had been for years, that it can well sustain itself, and that receivership proceedings would result in a serious loss to all concerned, appointment of receiver and liquidation of corporation upon petition of minority stockholders is denied as inequitable.

3. SAME—STOCKHOLDERS' SUITS—FINDING OF TRIAL COURT—RECORD.
    In minority stockholders' suit to have receiver appointed and corporation liquidated, finding of trial court that evidence showed no fraud nor breach of trust upon the part of the individual majority stockholders and that success would follow the continuance of the management but that special meeting of stockholders called by the then vice-president and the following meeting of the board of directors were illegal and void is affirmed under record presented.

Appeal from Kalamazoo; George (Fred W.), J., presiding.   Submitted October 11, 1939.   (Docket No. 114, Calendar No. 40,422.)   Decided February 14, 1940.

Bill by Catherine Kersjes and Norbert B. Wheeler against Henry J. Metzger and others to set aside action of a special stockholders' meeting, for an ac-

counting, an injunction, and other relief. From decree rendered, plaintiffs appeal. Affirmed.

*Kim Sigler* (*Burritt Hamilton*, of counsel), for plaintiffs.

*Howard, Howard & Howard*, for defendants.

Chandler, J. The Wheeler-Blaney Company was incorporated in 1907 and its charter renewed in the year 1937. The company carried on a business in plumbing, heating, steam and gas fittings. It took over a business which had been operated by one John A. Wheeler and associates since 1889. The company was incorporated for $40,000, there being 10,000 shares of stock of the par value of $4 each. After the incorporation, William Kersjes came into the business as a superintendent. Mr. Charles Blaney was one of the incorporators. Most of the stock was owned by Mr. Wheeler and Mr. Blaney. In 1904, one of the defendants, Henry Muir, entered the employ of the firm as a stenographer and later became bookkeeper. He also became a stockholder and director of the company. In the year 1908, defendant Henry J. Metzger came into the business as an employee and later became the steam-fitting superintendent and eventually a stockholder, director and vice-president. Defendant Albert Redmond entered the employ of the company in 1912 or 1913 and has worked continuously since that time. In 1926 he became an assistant superintendent of plumbing. He was also a stockholder and director. Defendant Edward Pettyjohn entered the employ of the company in 1936 in the capacity of stenographer and bookkeeper, which position he still occupies. Mr. Kersjes became president after the death of John A. Wheeler and continued in this capacity until his death in 1933.

After the death of Mr. Kersjes, Norbert B. Wheeler, son of John A. Wheeler, became president. The business prospered and expanded, all of the stockholders and directors taking an active part and devoting their whole time to the business. After the death of Mr. Kersjes, his wife, Catherine, one of the plaintiffs herein, succeeded to the ownership of his stock and was made a member of the board of directors. Sometime prior to the stock market crash in 1929, Mr. Charles A. Blaney borrowed money from the Bank of Kalamazoo and pledged his stock as collateral to the loan. However, Mr. Blaney continued as a stockholder and active in the affairs of the company until the loss of his stock about 1937, when he was replaced as a member of the board of directors by Mr. Charles A. Schultz, who, as receiver of the bank, had foreclosed the lien against the Blaney stock and had become the owner thereof. Neither Mr. Schultz nor Mrs. Kersjes took any active part in the affairs of the corporation, excepting to act upon the board of directors, and this caused some dissension and discord among the other stockholders who were all actively employed in the conduct of the business. The dissension continued, not seriously as disclosed by the record, but finally resulted in action by the stockholders on February 11, 1938, in the adoption of a motion to the effect "that the Wheeler-Blaney Company be dissolved." Those voting for this motion were the two plaintiffs and Charles A. Schultz. Those voting against were the defendants Metzger, Redmond and Muir. At this same meeting it was unanimously decided to declare a liquidating dividend of $2 per share to be paid at once from the cash of the company on hand, and payment of such dividends followed. The company at this time had on hand $25,000 in cash, $4,000 in government bonds,

and very little, if any, indebtedness existed. The company was not in financial difficulties.

After this action, the record shows that there were overtures made by the stockholders, one to another, to purchase each others' stock and some options were given but not exercised. The matter of selling the merchandise and tools on hand was discussed and it seems to have been the opinion of all concerned that Mr. Metzger and Mr. Redmond should be the parties to whom the sale should be made and they be permitted to continue the business. On one of these occasions, when the matter of the purchase of the capital stock was discussed, it was agreed that Mr. Muir, who had had much experience in the affairs of the company and who had had charge of the bookkeeping and knew the details of the business, should determine the book value of the stock. He determined the same to be $2.20 per share. Plaintiff Wheeler thought that the estimate was too low, and after much discussion it was finally decided among those interested that the book value should be $2.35 per share. Mr. Muir sold his stock at the book value which had been determined, as did a Mr. Crandall who was a stockholder, defendants Metzger and Redmond being the purchasers. Mr. Schultz declined to sell at this price but insisted that as bank receiver he must have $2.50 per share. The Schultz stock was finally purchased by defendants Metzger and Redmond. It appears, however, that plaintiff Wheeler had an opportunity to purchase the Schultz stock at this same price, as did also a brother-in-law of Mr. Wheeler. After these transactions, defendants Metzger, Redmond and Pettyjohn became the owners of a majority of the stock, and the record disclosed that at the time they purchased the Muir, Crandall and Schultz stock they had arranged with the bank for a loan that would enable them to buy the stock

of the plaintiffs at the book value as determined by
Mr. Muir.

It is clear from the record that the action of the
stockholders to dissolve was not taken seriously by
any one concerned, and no action was ever taken by
the board to carry out the resolution to dissolve.

Plaintiff Wheeler had been in ill health for some
time and contemplated a trip to Rochester, Minne-
sota, for treatment. The record disclosed that he
was requested by defendants Metzger and Redmond
to call a special meeting of stockholders before he
left, but he declined to do so. After plaintiff Wheeler
left Kalamazoo, Mr. Metzger, who was vice-presi-
dent, called a special meeting of the stockholders for
March 26, 1938, to take action on a proposal to amend
bylaws in which the details of the said proposed
amendments were set .forth. The notice was duly
served in accordance with the then existing bylaws.
Mr. Wheeler wrote to Mr. Metzger requesting a post-
ponement of the special meeting until he could be
present. His request, however, was refused. At the
special meeting, the bylaws were amended, reducing
the number of directors from 7 to 5. Other amend-
ments were also adopted. Immediately following the
meeting, the board of directors met, removed Mr.
Wheeler as president, and elected defendant Metzger
to succeed him. They also elected defendant Red-
mond vice-president and defendant Pettyjohn secre-
tary and treasurer, and fixed the salaries of the offi-
cers.

It is unnecessary to go into details of the action
taken either at the special meeting of the stock-
holders or at the directors' meeting immediately fol-
lowing, inasmuch as the trial court found that the
vice-president of the corporation had no right under
the bylaws to call said special meeting; that all pro-
ceedings taken at such meeting were invalid; that the

meeting of the board of directors held immediately following was invalid because the proceedings had at such board of directors' meeting were limited to discussion and action on the proceedings had at the special stockholders' meeting.

Subsequent to the action taken at the special meeting of the stockholders, and on May 28, 1938, plaintiffs filed their bill of complaint herein in which they charged the defendants with having attempted to fix a fictitious book value upon the assets of the corporation with the intent of depriving plaintiffs of their true and proper share in the assets of the corporation. They alleged that the special meeting of the stockholders and the meeting of the board of directors which followed were illegal; that the acts and conduct of defendants were all a part of a conspiracy, scheme and plan to get control of the company to the detriment and injury of plaintiffs; that the defendants had usurped the control of said corporation to the detriment of plaintiffs; that they had been spending money for the operation and conduct of the business in disregard of the rights of plaintiffs; and that the purchase by defendants of the stock of Charles A. Schultz, Henry V. Muir and Henry Crandall was fraudulent as against the rights of plaintiffs. In their prayer for relief, they sought a decree declaring the proceedings of said special meeting and the directors' meeting following to be illegal and void, an accounting from defendants of any and all funds illegally distributed, and further that the purchase by defendants of the stock of Messrs. Schultz, Muir and Crandall be declared illegal as to plaintiffs, and that defendants be decreed to be trustees holding said stock for the use and benefit of them. They further sought a decree of dissolution of the corporation because of the alleged fraudulent acts and conduct on the part of defendants; because of alleged mis-

management on the part of defendants, and because of dissension arising within the internal affairs of said corporation, which, it was alleged, was of so serious a character as would inevitably defeat the purpose for which the company was created. They also sought injunctive relief, and asked for the appointment of a receiver to take control and have custody of the assets and property of the corporation with authority to liquidate its assets and make ratable distribution thereof to the creditors and stockholders. The answer of the defendants denied all charges of fraud and misconduct and insisted that the purchase of the Schultz, Muir, and Crandall stock was in good faith.

Upon the trial of this cause, the defendants in open court offered to purchase the stock of the plaintiffs at the value placed thereon by Mr. Muir, and to pay the same price as they had paid for the Muir and Crandall stock.

It will be noted from the record that none of the stockholders, nor any of the parties to this suit, ever insisted upon any proceeding pursuant to the action taken by the stockholders on February 11, 1938, to dissolve the corporation; that the directors never took any action pursuant to said resolution, and that such resolution was never taken seriously by any one concerned. The trial judge was of the opinion that it was not considered a dissolution *de facto*. We are in accord with this finding. Neither in the allegations of the bill of complaint, nor in the prayer for relief, did the plaintiffs seek any relief by reason of the resolution referred to. The relief sought is entirely on different grounds. Therefore, the trial court was right in holding that the corporation had never been legally dissolved.

After a full hearing, the court denied plaintiffs the relief sought except with reference to the special

meeting of the stockholders and the meeting of the board of directors following, both of which he held to be illegal and void.

This appeal followed on the part of plaintiffs. Defendants took no cross-appeal.

A careful review of the record clearly indicates to us that it would be inequitable to place this corporation in the hands of a receiver. The record shows that the business of the company is much better than it has been for years and that it can well sustain itself; and that receivership proceedings would result in a serious loss to all concerned. The trial court found that the testimony taken upon the hearing showed no fraud on the part of defendants and no breach of trust. He further found, and was of the opinion, that from the record and from the character and stability of all concerned in this corporation, success would follow the continuance of the management.

We are in accord with the findings and decree of the court below.

Decree affirmed, with costs to defendants.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, MC-ALLISTER, WIEST, and BUTZEL, JJ., concurred.